## PETER C. RAGSDALE v. J. A. ROBINSON.

1. PRACTICE.—No objections to an instrument offered in evidence, not made in the court below, will be considered on appeal, even though objections be apparent upon it, and the original be sent up with the record.

2. DEED—DESCRIPTION.—To warrant the exclusion of a deed duly proven and offered in evidence, the court must be able to determine, from inspection of it, that it is absolutely void, or that it was for other and different land than that claimed.

3. PRACTICE.—After a deed has been admitted in evidence, parol testimony, introduced in rebuttal, will not authorize the court to withdraw it from the jury. The testimony goes with the deed to the jury for their action.

4. EVIDENCE.—Evidence that A or B did a certain act, is not admissible to prove that A did it.

5. DEED EXECUTED IN BLANK.—When a party delivers a deed duly executed, with parol authority to fill blanks, and this is done, he is estopped from denying its validity, against a subsequent purchaser for value, and without notice of the manner in which the deed was executed.

6. CALLS IN A DEED.—A deed described a tract of land as 200 acres of land, part of the John Cauble headright survey, the other part of which survey having been sold to Gilliland; that sold to Gilliland having been identified : *Held,* A sufficient description of land, and to control contradictory calls for beginning corner, curves, and distance.

7. CONSTRUCTION.—Rules of construction of contracts discussed.

APPEAL from Smith. Tried below before the Hon. J. L. Henry, special judge.

March 23, 1874, Peter C. Ragsdale brought an action of trespass to try title against Julius A. Robinson for one-third interest in 200 acres of land, part of the John W. Cauble 640 acres headright.

The defendant pleaded not guilty, and limitation of three and five years.

The parties also pleaded specially their titles, the various amendments covering about forty pages of the record.

On the trial, plaintiff read patent to John W. Cauble for 640 acres of land, and a deed from Cauble to plaintiff for one-third interest therein.

The defendant filed his deeds relied on for title, with notice to plaintiff, September 10, 1874, and on the trial read, over objections, the following deed:

"THE STATE OF TEXAS, ⎰
  *County of Guadalupe.* ⎱

Know all men by these presents, that I, Peter C. Ragsdale, in consideration of $200 to me in hand paid by Nathaniel Killough, the receipt is hereby acknowledged, have granted, bargained, sold, and released, and by these presents do grant, bargain, sell, and release unto the said Killough my interest, the following tract of land, situated in Smith county,

near the southwest corner, and known as a part of the head-right of John Cauble: Beginning at a post on the west boundary-line of a seven-league survey, *a post* from which a red-oak *bears N. 36° W. 1 varas; another varas S. 32° W. 1* varas; *thence north 832 varas, to a post from a willow-oak bears N. 3° E. 2$\frac{2}{10}$ varas; another bears N. 49 E. 5$\frac{2}{10}$ varas; thence north and east so as to include two hundred acres of land, (the other part of the above survey having been sold to Gilliland,)* to the beginning, containing 200 acres of land, together with all and singular the rights and appurtenances to the same belonging; to have and to hold all and singular the premises above mentioned unto the Killough, his heirs and assigns, forever. And I do hereby bind myself, my heirs, executors, and administrators, to warrant and forever defend the title to one-third of the above-named tract of land, it being all my interest in the same, unto the said Nathaniel Killough, his heirs and assigns, against every person lawfully claiming the same or any part of it.

Witness my hand and seal, using a scrawl for seal.

Signed, sealed, and delivered in presence of —— ———,
December 10, A. D. 1862.

Attest:     PETER C. RAGSDALE." [SEAL.]

The deed had been duly acknowledged and recorded. To the deed, it was objected: (1) It does not describe the land sued for; and (2) it is unintelligible, and describes no land whatever.

Before the trial, the plaintiff filed an affidavit, denying the execution of the deed.

Defendant then read the will of Nathaniel Killough; deed by executors of Killough to Jefferson Wallace, of date February 5, 1867, for 200 acres of the John Cauble 640 acres head-right; (describing the tract as "beginning at the southwest corner of said survey; thence N. 832 varas; thence N. 45° E. 594 varas; thence E. 592 varas, to a stake from which a hickory six inches in diameter bears S. 24° E.; thence S. 1,232 varas, to a stake on the south boundary-line, with bear-

ing-trees; thence W. 982 varas, to the beginning;") deed from Wallace to J. F. Rosbury and defendant, for the same land, September 20, 1867; and deed from Rosbury to defendant, November 12, 1871.

Defendant then read copy of a deed from Peter C. Ragsdale, plaintiff, to John H. Gilliland, administrator of the estates of E. H. and Margaret Gilliland, of date December 5, 1870, for all his interest in said John Cauble survey.

A. J. Glaze, for defendant, testified that Wallace traded a tract of 200 acres to Killough for the land in controversy, and entered upon it in 1862 or 1863, and had lived on it until his sale to Rosbury and Robinson, in 1867. Witness knew the land in controversy. All the balance of the Cauble 640 acres survey was sold by plaintiff to E. H. Gilliland in 1859, and a deed therefor was made to John H. Gilliland several years after the war. Witness testified to conversations of plaintiff touching the sale to Gilliland. The 200 acres in controversy does not touch the seven-league grant. It is in the southwest corner of the Cauble survey. Robinson had held possession of the land, from Wallace's sale, in 1867, up to the trial.

Plaintiff, in rebuttal, called Ira Ellis, who testified that he was a surveyor. After examining the map of Smith county and the field-notes set out in the petition, he testified that it being in the southwest corner of the Cauble survey, and by following the field-notes, it would not touch the seven-league grant. After examining the deed from Ragsdale to Killough, he stated that to follow out the field-notes, the land would fall on the seven-league survey, and did not contain any portion of the Cauble survey. That a tract with the beginning corner on the west line of the seven-league survey, would not describe land situated in the southwest corner of the Cauble survey.

" He stated, also, that in the deed from Ragsdale to Killough, the name Killough and the description (that part in italics

above) were in different handwriting and different ink from the balance, which was in Ragsdale's handwriting.

"A deed to land which ran off on the seven-league survey, could not be a part of the Cauble survey. The first call East in the deed would not be a call for land on the Cauble survey.

"If a man had sold 440 acres off and out of a 640-acre tract, leaving only 200 in the southwest corner, in order to sell 200 acres of this survey he would have to sell out of the southwest corner. The deed, then, was a misdescription."

Below is a sketch showing the Cauble survey, with reference to the seven-league grant. The surveys are in southwest part of Smith county.

Plaintiff testified that he had located the John W. Cauble 640-acre tract, and that Cauble made him a deed to an undivided one-third interest for his services; that on receiving a letter, he wrote a deed to his undivided one-third interest in 200 acres, to be taken off the north end of the Cauble tract, to begin in the western boundary of the Querado seven-league survey, and at the northern corner of the Cauble survey;

thence with its northern and western boundary to a point, so that by running due east to the western line of the seven-league survey, and thence north to the beginning, would contain 200 acres; that he left blanks for courses and distances and bearing-trees, and for the name of the grantee; that he acknowledged the deed in Guadalupe county, and forwarded it to Killough; that he fixed the beginning corner on the western boundary of the seven-league survey, and northern corner of the Cauble survey; that after Killough's death he sought to regain the deed, searching among his papers, and in the clerk's office at Tyler; that he had paid taxes continuously on the land.   Witness also testified to conversations with Robinson, which were in turn denied by Robinson.

On the trial, the fourth interrogatory to Ragsdale, and the answer, were excluded on exceptions, as follows:

"Int. 4.  Did you receive a letter from Nathaniel Killough about December 1, 1862, in regard to the transfer of a part of the Cauble survey?   If yea, attach the said letter to your answer; and if the same is not in your possession, state whether it is lost or destroyed; and if so, state as near as possible the contents of the letter."

"Ans. to 4th.  I received a letter about 1st of December, 1862.   I am not certain whether it was from Nathaniel Killough or my brother, E. B. Ragsdale, stating that N. Killough had contracted to sell 200 acres of land off the northern end of the Cauble survey, in Smith county, Texas, and said Killough wished me to send a deed in blank, that he might fill it out and put in the name of the purchaser.   The letter is lost or destroyed, and I have stated its contents as near as I can."

After the testimony of Ellis had been introduced, plaintiff moved to exclude the deed from Peter C. Ragsdale to Killough, because it described land different from that sued for.

April, 1877, the case was tried on the above testimony.

The charge of the court is sufficiently indicated in the opinion.

Verdict and judgment were for the defendant, and Ragsdale appealed.

*Whitaker & Robinson,* for appellant.

I. We objected to the introduction in evidence of the instrument purporting to be a deed from plaintiff to N. Killough, because the same did not describe the land in controversy, nor did it describe any land; and, after the introduction of Ira Ellis, moved to exclude the deed, upon the ground that it did not describe the land in controversy, as shown by the testimony. These motions were not only overruled, but the judge, in his charge, gives not one word of instruction upon this very important issue. As sustaining the exceptions referred to, we would not only urge that unless this instrument actually calls for the land in controversy, or, by the legal rules of construction, could be made to do so, then it would constitute no muniment of title in this suit; but, in the second place, if it describes no land, or so inaccurately that it cannot be identified, which is evident on the face of the instrument, then we invoke the law—that if land be so inaccurately described as to render its identity wholly uncertain, the grant is void. (1 Greenl. Ev., sec. 350; 3 Wash. on Real Prop., 381–398; Wofford *v.* McKinna, 23 Tex., 36; Kingston *v.* Pickins, 46 Tex., 101; 5 Tex., 312.)

II. As to the manner of construing this instrument.

1. Under this head, we complain of the error of the court in excluding that part of the plaintiff's deposition wherein he states that he received a letter from his brother, E. B. Ragsdale, or from N. Killough, informing him that Killough had contracted to sell 200 acres off of the north end of the Cauble survey. We contend that the evidence was legal, from whoever plaintiff may have received the letter, as going to show his intent in the instrument; upon the principle that it is admissible to prove the circumstances and information upon which a party acted as explaining his action. (Wash.

on Real Prop., 404; 1 Greenl. Ev., secs. 286–288; Stanley *v.* Green, 12 Cal., 162.)

2. The first great rule in construing written instruments is to give them such meaning as was intended by the parties at the time of the execution.

But we must go further, and invoke other rules not given in the charge, and which are necessary to arrive at the true meaning of the instrument. The second step is, that since the beginning corner for land to be embraced in the Cauble survey is inconsistent with the course and distance given, then the beginning corner stands upon the principle, that first a natural and then an artificial object controls course and distance. (3 Wash. on Real Prop., 405; Bolton *v.* Lann, 16 Tex., 96.)

The third step is, that since the beginning corner fixed in the instrument is repugnant to the fact that all the land of the Cauble survey lying adjacent to the seven leagues had been sold to Gilliland, and the former being the first of the two repugnant clauses, it is held to prevail over the last. (3 Wash. on Real Prop., 398.)

Now, what is the result of the application of these rules? The deed, as far as a description of the land goes, remains just as it was when it left the hands of Peter C. Ragsdale, that is, a deed calling for land on the Cauble survey, with the beginning corner " on the W. B. line of the seven leagues," which corroborates in every particular the testimony of the plaintiff; and we may remark, that it is rather a significant circumstance when rules of law sustain a witness' testimony so minutely.

III. We now come to the investigation of the case upon the proof that the instrument, when it left the hands of the plaintiff, was incomplete in two essential particulars, that is, as not naming any grantee or describing any land.

1. Real estate, in this State, can only be conveyed in such manner as has been laid down in Paschal's Digest, art. 997, and that is, that the instrument of conveyance shall contain all

the elements necessary to make a deed, after which it shall be acknowledged before the proper authority. Now, when this instrument was signed and acknowledged by Peter C. Ragsdale, it had no significance, it spoke no language, and was of no greater effect than so much blank paper, with the party's signature and acknowledgment on it. (Park *v.* Glover, 23 Tex., 472.)

However plausibly it may be contended that this instrument could have been filled out before acknowledgment by a proper party, it, at any rate, cannot be urged with any reason, under our statute, that the same could be done after acknowledgment; and this, we say, is the rule, whether the instrument was in the hands of an innocent purchaser or not, and with the greater force when the face of the instrument itself is sufficient to create a suspicion, and put an ordinarily prudent man upon such inquiry as would lead to the true facts of the case. (3 Wash. on Real Prop., 242; McCown *v.* Wheeler, 20 Tex., 372; Viser *v.* Rice, 33 Tex., 139; Upton *v.* Archer, 41 Cal., 85; Preston *v.* Hull, 23 Gratt., (Va.,) 603; Master *v.* Miller, Smith's Lead. Cas., and notes; Cross *v.* State Bank, 5 Pike, (Ark.,) 524; Mano *v.* Worthing, 3 Scam., (Ill.,) 26; Ingram *v.* Little, 11 Ga., 174; Byrns *v.* Lynde, 6 Allen, 305; Bashford *v.* Pearson, 9 Id., 387; Williams *v.* Crutcher, 5 How., (Miss.,) 71; 2 Dev. & Bat. Law, 381.)

2. If this instrument could be filled out after acknowledgment, it, at any rate, could not be in the name of the agent to whom it had been intrusted to complete the sale of the land; and could be avoided as to parties holding under him who knew, or might have known by reasonable diligence, of such defects. And here we submit, that special charges 4 and 5, asked for by the plaintiff, and refused, were proper, and should have been given. But the court, in the charge throughout, seems to have taken the view that the defects in the instrument must have absolutely been known to the defendant, although they may have been patent enough to have

put an ordinarily prudent man upon inquiry that would have led to their discovery.

IV. We come next to consider this instrument as altered in material particulars. 1 Greenleaf's Evidence, sec. 565, says: "Any alteration of an instrument which causes it to speak a language different in legal effect from that which it originally spoke, is a material alteration." In this instance, we think that the addition of the name of the grantee, and a description of land different from that intended by the grantor, is a material alteration, because, in the language of Park *v.* Glover, 23 Tex., 472, "As it was originally written, it had no legal effect; it spoke no language at all. By the addition of these words, a distinct legal effect was given to it; it was made to speak effectually and clearly." It is well established by the authorities, that the alteration of an instrument in a material part renders the instrument void; and since every person must take notice of what his title papers disclose, the rule would apply with greater force here, because the fact of the alteration is apparent upon the face of the instrument; or if not, it is, at any rate, sufficiently evident to arouse such suspicion as would put an ordinarily prudent man upon inquiry. And the defendant can derive no benefit from the fact that he never saw this deed until after the institution of this suit.

The further rule of law, in connection with this subject, is that the burden of proof is on the party who offers an altered instrument to explain the alteration, and show that it was made with the consent or authority of the maker of the instrument; and the instrument should be excluded from the jury until the alteration is accounted for, or they should be instructed to disregard it in their finding, as requested by the plaintiff in his special charges. But, strange to say, these well-recognized rules of law were ignored by the court, and the charges refused. (3 Wash. on Real Prop., 243, *et seq.;* Waring *v.* Smyth, 2 Barb. (N. Y.) Ch., 119; Lewis *v.* Payn, 8 Cow., (N. Y.,) 71; Chesley *v.* Frost, 1 N. H., 145;

Bowers v. Jewell, 2 N. H., 543; Wade v. Withington, 1 Allen, 561; Getty v. Shearer, 20 Penn. St., 12; Preston v. Hull, 23 Gratt., 605; Nunnery v. Cotton, 1 Hawks., 222; Burton v. Pressley, 1 Cheves, (S. C.,) 1; Park v. Glover, 23 Tex., 471; Ricks v. Wofford, 31 Tex., 415; 1 Greenl. Ev., sec. 564, et seq.; Smith v. McGowan, 3 Barb., 404; Jackson v. Osborn, 2 Wend., 555–9; Herrick v. Malin, 22 Wend., 388; Galland v. Jackman, 26 Cal., 85; United States v. Linn, 1 How., 104; Hills v. Barnes, 11 N. H., 395; Walters v. Short, 5 Gill., (Ill.,) 252; Jordan v. Neilson, 2 Wash., (Va.,) 166; Hodge v. Gilman, 20 Ill., 437; Farnsworth v. Sharp, 4 Sneed, (Tenn.,) 55; Huntington v. Finch, 3 Ohio, (N. S.,) 445.)

*G. W. & Horace Chilton,* for appellees.—We proceed now to inquire as to the proper construction to be placed upon the deed from Ragsdale to Killough. On the question of the construction of a deed where calls conflict, the first great rule is to ascertain, not the mere intention of the grantor, "but the understanding of the parties, and those who were acting upon and interested in it." (Rogers v. Broadnax, 27 Tex., 240.) And it is the part of the jury, and not of the court, to decide upon the weight and effect to be given to each and every call, subject to review by the court on a motion for new trial; (Booth v. Upshur, 26 Tex., 64; Booth v. Strippleman, 26 Tex., 441; Jones v. Burgett, 46 Tex., 292;) and it is to be noticed here, that appellant himself took this view of the case on the trial below, and he will not be heard now to complain that the jury were not instructed as to the weight due to the different calls. We ask the court to carefully read the charge of the court, and we think it will be found that it states fully and clearly all the rules of law which were necessary to the proper decision of the case. The general rule for the identification of a survey, is that "the most material and most certain calls should control those which are less material"; but there is no fixed and

invariable rule by which one class of calls are held to prevail over others. While courts have laid it down as a rule of logic and of law, that first natural and then artificial objects shall be preferred to course and distance, yet the calls least in dignity may, in some cases, become the most material calls. (Phillips v. Ayres, 45 Tex., 601.) The appellant argues, that the call for "beginning corner on the W. B. line of the seven leagues" should prevail over the call, "the other part of the above survey having been sold to Gilliland," on the principle that the former of two repugnant clauses should be preferred to the latter. Now, this argument proceeds on the theory that these two calls are of equal dignity, which is not the case. We have already shown the court, that, under the circumstances, the last call is the most certain call contained in the deed,—that it is necessarily exact. But, again, the rule which counsel invokes is not applicable, for Mr. Greenleaf says, (vol. 1, sec. 301,) speaking of the construction of deeds: "It is vain to imagine one part before another; for though words can neither be spoken nor written at once, yet the mind of the author comprehends them at once, which gives *vitam et modum* to the sentence." Again, appellant did not ask any instruction on this point, and we are not at liberty to consider whether or not such charge would have been correct. In conclusion, we may add, that the object in "cases of this kind is to ascertain the intent of the parties. The rule to find the intent, is to give most effect to those things about which men are least liable to mistake." (Davis v. Rainsford, 17 Mass., 210; McIver v. Walker, 9 Cranch, 178.) Now, can there be any doubt that men are more likely to mistake a beginning corner, than the fact that the remainder of a survey has been sold to another person? Then, again, Mr. Greenleaf says, (vol. 1, sec. 301,) citing numerous authorities: "So if lands are described by the number or name of the lot or parcel, and also by metes and bounds, and the grantor owns lands answering to the one description and not to the

other, the description of the land which he owned will be taken to be the true one, and the other rejected as *falsa demonstratio.*" In this case, the call, "west boundary line of the seven leagues," would include land which the grantor did not own at any time; and the call, "the other part of the above survey having been sold to Gilliland," would include land which he did own; therefore the last call is to be preferred.

As tending to aid the court in the interpretation of this deed, we state some principles: 1st. Doubtful words and provisions in a deed are to be taken most strongly against the grantor. (Adams *v.* Frothingham, 3 Mass., 352; Hogg's Appeal, 22 Penn., 190; Cocheco Manf. Co. *v.* Whittier, 10 N. H., 305, and many other cases.) 2d. Every deed is to be construed with reference to the actual rightful state of the property conveyed by it at the time of its execution. (Richardson *v.* Palmer, 38 N. H., 212; Moore *v.* Griffin, 22 Me., 350.) 3d. Where a deed may inure several ways, the grantee may elect which way to take it. (Jackson *v.* Hudson, 3 Johns., (N. Y.,) 375.) 4th. If the description be sufficient to ascertain the estate conveyed, although the estate will not agree to some of the particulars in the description, it will pass by the conveyance. (Worthington *v.* Hyler, 4 Mass., 196; Sawyer *v.* Kendall, 10 Cush., 241.) 5th. If by a particular construction the agreement would be rendered frivolous and ineffectual, and the apparent object of the contract would be frustrated, but a contrary exposition, though *per se* less appropriate, looking to the words only, would produce a different effect, the latter interpretation shall be applied, if it can possibly be supported by anything in the contract, or in the nature thereof. (Chitty on Cont., 78.)

The third point made by appellant in his brief, is as to the filling of the blanks in the deed, thereby constituting an alteration, as he contends. Before we consider the validity and effect of a filling of a blank in a deed, we desire to submit to the court a few observations as to the right of appellants to

raise this question. First, we maintain, that as defendant specially deraigned his title, plaintiff had no right to prove any matter seeking to avoid the deed, without first having plead this matter in avoidance. (See authorities before cited.) Second, that the deed not having been objected to when offered in evidence, on that ground, plaintiff had no right to a charge upon the question. In other words, can a party allow a deed, in which he claims that blanks have been filled, and thus altered, to go in evidence, without objection on that score, and then seek to destroy its effect by a charge to the jury? Was it not incumbent on the plaintiff to plead specially that certain blanks in the deed had been filled, and then, when it was offered as testimony, to object to it, if he conceived it to be altered? We think this was clearly the proper course to have been pursued; otherwise, a party may introduce a deed, and when the case goes to the jury, have its sufficiency assailed on grounds which he might have obviated, if he had been apprised of its supposed deficiency by the pleadings, and if objection had been made when it was offered in evidence. The question of the alteration of a deed by the filling of blanks, like every other question of alteration, is one of evidence, and unless objection is made to it at the proper time, it cannot afterwards be attacked. The plea of *non est factum* in this case, called in question only the execution of the deed, and did not do even this in a way to throw the defendant upon its proof, because the plea was filed more than one day after the deed. No proof could be received under it, except proof establishing the non-execution of the instrument. (Barnett *v.* Logue, 29 Tex., 282; Wells *v.* Moore, 15 Tex., 522.)

What is the effect to be given to a deed, where no plea of *non est factum* has been filed within the statutory time? A plea, styled a plea of *non est factum*, filed more than one day after a deed, is of no greater effect than an unsworn plea setting up the same defense. The fact that the plaintiff made oath to the plea in this case, adds to it no force whatever. Consequently, when the deed was offered, the plea was, in

law, equivalent to the same matter written upon a piece of paper, and signed by Ragsdale's counsel. Now, under these circumstances, what was the effect of this deed as evidence? If there had been subscribing witnesses to the deed, clearly it was entitled to the same force "as if its due execution had been proven on the trial by the subscribing witnesses." (Jordan *v.* Robson, 27 Tex., 612.) But as in this case there were no subscribing witnesses, what was the status of the deed? The deed being acknowledged, it stood as if Peter C. Ragsdale had acknowledged the deed before the officer whose name and seal were affixed to it. Then the question arises,— Is not the acknowledgment conclusive of the facts therein stated, as between the grantor and a *bona-fide* purchaser of the land? (Wiley *v.* Prince, 21 Tex., 640; Shelby *v.* Burtis, 18 Tex., 644; Hartley *v.* Frosh, 6 Tex., 215; Pool *v.* Chase, 46 Tex., 210; Kerr *v.* Russell, 69 Ill., 666; Harkins *v.* Forsythe, 11 Leigh, (Va.,) 294, and other cases.) But it will be attempted to reply to this, by saying that the acknowledgment only concludes Ragsdale as to what was in the deed when he acknowledged it. But how can this court determine what was, and what was not, in the deed when Ragsdale acknowledged it? No plea of *non est factum* having been filed, the acknowledgment stands proven in this court, and it is Ragsdale's testimony at last contradicting the acknowledgment. If Ragsdale can be permitted to testify in this case that certain parts of a deed were not in it when acknowledged, what is there to prevent any grantor from coming in and destroying a deed, by swearing that certain parts of it had been put there after the acknowledgment? The fact that certain parts of the deed are in a different handwriting and ink, does not conflict with this view, because it resolves itself again into the competency of Ragsdale's own testimony, that these blanks had not been filled at the time he acknowledged it. The case of Park *v.* Glover, 23 Tex., 471, does not apply to this case; for there the certified copy from the county records showed that the blanks had been filled after the title

bond had been recorded.  But even if these objections which we have urged did not prevent plaintiff from raising the question, yet the principle which appellant contends for is not correct.  That the blanks could have been filled, see Van Etta *v.* Evenson, 28 Wis., 83; Gibbs *v.* Frost, 4 Ala., (N. S.,) 720; Banks *v.* Hammond, 1 Rich., 281; Gourdin *v.* Commander, 6 Rich., 497; Duncan *v.* Hodges, 4 McC., 239; Camden Bank *v.* Hall, 2 Green, 383; Worrall *v.* Munn, 5 N. Y., 229; Drury *v.* Foster, 2 Wall., 24; Field *v.* Stagg, 52 Mo., 534; Speake *v.* United States, 9 Cranch, 28; White *v.* Ver. & Mass. R. R., 21 How., 575; Smith *v.* Crooker, 5 Mass., 538; Jones *v.* Primm, 6 Tex., 170, and other cases. Viser *v.* Rice, 33 Tex., 139, and all the other cases cited by appellant which we have examined, are cases between the original parties to the instrument.  An examination of the case of McCown *v.* Wheeler, 20 Tex., 372, will show that the point decided in that case is favorable to us.  Further, there was no instruction asked by plaintiff as to the right of a party to fill a blank after acknowledgment of a deed, and his complaint, that no such instruction was given, cannot be heard. We think it would be strange if an innocent third party should be deprived of land by the remote grantor, because blanks in a deed were filled, when the blanks were left there by the grantor for the very purpose of being filled.

As to the alteration of the deed, we here reiterate what we have already said on the question of the conclusiveness of an acknowledgment, and the inadmissibility of such a defense in the absence of pleading, and again specially call the attention of the court to the fact that no objection was made to the deed as an altered instrument.  In addition to all this, we do not understand the law to be, that a filling of blanks which were left to be filled, or the use of different ink, constitutes a material alteration.  (Howard *v.* Colquhoun, 28 Tex., 142; Drury *v.* Foster, 2 Wall., 24; Speake *v.* United States, 9 Cranch, 28; 1 Greenl. Ev., sec. 568.)  It would certainly be very hazardous to purchasers, if the fact

that part of a deed was in a different ink and handwriting avoided their deeds, as being materially altered. Then again, the presumption of law is, that the alteration was made before or at the time of the execution of the instrument. (Stoner *v.* Ellis, 6 Ind., 152; Matthews *v.* Coalter, 9 Mo., 705; Maybee *v.* Sniffen, 2 E. D. Smith, (N. Y.,) 1; Farnsworth *v.* Sharp, 4 Sneed, 55.)

MOORE, ASSOCIATE JUSTICE.—This is an action of trespass to try title, brought by appellant, Ragsdale, against appellee, Robinson, for an undivided one-third of a tract of 200 acres of land, a part of a tract of 640 acres patented to John W. Cauble.

All the important questions in this case arise out of, and depend upon, the construction and effect to be given to an instrument purporting to be a deed from appellant to N. Killough, through and by which appellee claims to deraign his title. By an agreement of the parties, this instrument has been sent up with the record, that the court may, from an inspection of the original instead of a copy, more fully and clearly apprehend the objections made to it, and more satisfactorily and correctly pass upon and determine them. It may, however, be well, before entering upon the consideration of the supposed errors relied upon for the reversal of the judgment by counsel for appellant, to say that the fact of the original instrument being brought up with the record does not warrant objections being made to it here, which were not taken in the court below, even though it is manifest, from an examination of the instrument, that such objection, if taken at the proper time, should have been sustained.

The first point urged by appellant's counsel for a reversal of the judgment, is that the court erred in admitting this purported deed from Ragsdale to Killough over his objections, which were: 1st. Said deed does not describe the land sued for. 2d. The deed is unintelligible, and describes no land whatever. To have warranted the court in excluding

the deed from the jury, as has been, in effect, decided by this court, (Kingston *v.* Pickins, 46 Tex., 99,) it must have been able to say, from inspection of it, that it was absolutely void, or that it was for other and different land than that claimed by the plaintiff. An inspection of the deed shows that it is a very inartificial instrument; that the draughtsman was extremely careless and indifferent to the proper discharge of the duty he had undertaken, or wholly unqualified to prepare such an instrument. But while this is the case, we cannot say the deed is void, or that it describes other and different land from that for which appellant sues. Nor did the testimony of the witness Ellis give any additional force to appellant's objections. The evidence of the witness was not addressed to the court to rebut evidence of the appellee to establish a predicate for the admission of the deed; nor was it called for, or necessary for any such purpose. It was testimony for the jury, to be weighed and considered by them in determining the issues on which it bore. Whatever effect the court might believe it should have in determining whether the deed described any land at all, or if it did, in showing its proper locality, this effect could be attained only by the action of the jury on it, and such other testimony as might be submitted to them.

If it was material to show that appellant forwarded the deed to Killough, because he had received a letter from Killough requesting him to do so, the court did not err in excluding that part of appellant's deposition to which appellee objected. The answer was not responsive to the question propounded, and was inadmissible to prove that the letter in question was from Killough. Evidence that either A or B did a particular act is not admissible to prove that A did it. If, however, as we are inclined to think, it was immaterial from whom appellant received the information which induced him to forward the deed to Killough, the ruling, though erroneous, is immaterial, and worked appellant no injury. His

statement of what he was induced to do by the letter was admitted in evidence without objection.

It is maintained by appellant, that the deed to Killough is void, because it was incomplete when it was acknowledged by him, and when it left his hands. This objection is unquestionably valid in fact, and if good in law the judgment should be reversed. The rule insisted upon by appellant certainly is recognized as correct, in respect to deeds and other instruments of like character, by many courts of the highest authority and the majority of the earlier decisions. But it is flatly denied by an equal, if not a greater, array of authorities at the present day. (Van Etta *v.* Evenson, 28 Wis., 33; Drury *v.* Foster, 2 Wall., 24.) Neither time nor space will admit of our attempting a review of even the leading cases on the subject, or to give the reasons which lead us to concur, as we think, with the majority of the more recent decisions, to the extent, at least, of saying that when a party delivers a deed duly executed, with parol authority to fill blanks, and this is done, that he is estopped against a subsequent purchaser for value, without notice of the manner in which the deed was executed, from denying its validity, which is as far as we need go in this case. (3 Wash., 220, and cases there cited.)

The objection to the deed as an altered instrument is untenable. No such objection was made to it when offered in evidence; if it had been, the objection might have been fully met and explained. It comes too late when made after appellee's mouth is closed, if the burden of removing any suspicion cast upon an instrument by apparent alterations or erasures rests on the party offering the instrument. But the real objection to this deed was that there were blanks in it when it was acknowledged, which had been subsequently filled, with the consent and permission of the grantor, by the party to whom it had been sent, and not that it had been altered after the blanks had been thus filled.

The most serious and difficult question in the case, to my mind, is whether the deed can be held to sufficiently de-

scribe the land in controversy to pass the title. The beginning corner and the call for course by which the land is to be surveyed, are clearly repugnant to, and contradictory of, the call for the survey in which the land sold is situated. These contradictory calls cannot be reconciled. One or the other must be disregarded. And we agree with the court below, that preference should be given to the call for the survey from which the land sold is to be taken, rather than to the beginning corner and calls for course by which the land should be surveyed. Unquestionably, the parties would be more liable to fall into error in the latter calls than the former. This conclusion is also supported by the maxim, that that construction should be preferred which gives effect to contracts, rather than that which renders them inoperative and void, where there is nothing else to turn the scale; and also by that which says, when the proper interpretation of an instrument is doubtful, it should be construed most strongly against the maker. Controlling weight must be given to the calls describing the land conveyed as 200 acres of land, a part of the John W. Cauble headright survey; and also to the statement, by way of further identity, that "the other part of the above survey having been sold to Gilliland." This description of the land, in connection with the identification of the remainder of the tract previously sold, fully identifies and fixes the locality and boundaries of the 200 acres conveyed by the deed.

Other questions are presented by the assignment of errors, and some of them have been discussed by counsel; but what has been already said renders it unnecessary to extend this opinion to a greater length. The appellant is estopped, as we have previously said, from controverting the validity of his deed to Killough. He made no pretense to owning more than one-third of the Cauble survey, which was 640 acres; yet it appears that he has sold 440 acres of it—more than twice as much as he is entitled to under his deed, and all of the survey, except the 200 acres in suit. The alleged defect in

defendant's title, which is urged as a reason why he should recover the land, has resulted from appellant's act, or that of the party whom he trusted to act for him. In no aspect in which we can view the case, has appellant either a legal or equitable right to a reversal of the judgment or a recovery of the land.

The judgment is affirmed.

AFFIRMED.