(No. 5019. May 2, 1929.)

CRAWFORD MOORE, as Trustee, Respondent, v. WILL-
IAM P. CROFT and IDA J. CROFT, His Wife,
Appellants, and DAVID O. HARRIS et al., Defendants.

[277 Pac. 423.]

S. T. Lowe, for Appellants.

Edwin Snow and Karl Paine, for Respondent.

BRINCK, District Judge.—Plaintiff brought this action to foreclose a mortgage upon real estate. The facts as they appear from the findings of the trial court are as follows: About February 15, 1921, pursuant to negotiations commenced on February 2, 1921, E. R. Dampier, as trustee for the stockholders and bondsmen of the Heyburn State Bank and for its benefit, borrowed $20,000 from plaintiff as trustee for four Boise banks, and as such trustee executed his notes therefor to the plaintiff. On or about February 3, 1921, the defendant William P. Croft, being the owner of certain lands, and for the purpose of enabling the Heyburn State Bank to obtain funds to carry on its business, delivered to one John W. Voorhees, who was one of the persons in charge of the business of the Heyburn State Bank, his promissory note for $3,000 and a mortgage upon said lands securing the same. At the time said instruments were delivered to Voorhees the note was blank as to the name of the payee and the rate of interest, and the mortgage was blank as to the description of the property and the name of the mortgagee and the description of the obligation to be secured; and it was at that time understood and agreed between Croft and Voorhees that the said blanks would be filled by Voorhees or some other person so that the note would be payable to the state of Idaho and bear interest at six per cent per annum, and so that the mortgage should describe the said lands, should designate the state of Idaho as mortgagee, and should secure the payment of a note payable to the state of Idaho, bearing six per cent interest. The execution and delivery of said instruments to Voorhees were induced by false representations made by said Voorhees and one J. J. Connor, who with Voorhees was in charge of the business of the Heyburn State Bank, such representations being to the effect that the loan would be procured from the state of Idaho, that the bank would deliver to Croft certain securities and would repay the loan to the state; false representations were also made as to the financial condition of the bank. Croft relied upon said representations in executing and delivering the instruments, and the bank did

not deliver to him the promised securities nor repay the loan which was obtained by the use of the Croft and other collateral. Croft received no consideration for his note and mortgage. Efforts made to procure the contemplated loan from the state of Idaho were unsuccessful, and the loan from plaintiff was arranged, whereupon Voorhees inserted in the mortgage the description of the land and filled up the blanks in the note and mortgage designating plaintiff as payee and mortgagee, and ten per cent as the rate of interest, all without the knowledge or consent of Croft. The loan made by plaintiff was made only upon the condition that his notes be secured by collateral notes and mortgages in his favor, and defendant's note and mortgage were used as a part of the collateral for said purpose, having been filled up and completed prior to their delivery to plaintiff, who had no knowledge or notice either of the false representations or of the fact that the instruments were not complete when delivered by Croft to Voorhees. At the time the note and mortgage were signed by Croft he was not a stockholder in or a surety for the Heyburn State Bank; but thereafter, the stockholders of the bank having surrendered their stock to Dampier as trustee for the benefit of the bank, the stock was on or about January 10, 1922, apportioned among the persons, including defendant, who had furnished the security upon which the loan had been obtained from plaintiff. Croft was elected president of the bank at that time, and continued to act as such until about May 30, 1922; when the bank was closed. He had known since the summer of 1921 that his note and mortgage to plaintiff had been filled up contrary to his instructions, and thereafter, on June 21, 1922, with full knowledge of whatever defenses he had to this action, had delivered to plaintiff a release of a mortgage that had been recorded prior to plaintiff's mortgage. Defendant set up in his answer the false representations and the unauthorized filling of the blanks in the instruments. The trial court took the position that the note in question was non-negotiable, and found as conclusions of law that as between plaintiff and the defendant Croft, the unauthorized act of filling the blanks must be deemed the act of defendant

Croft, and that he must bear the loss occasioned by the confidence reposed by him in said Voorhees and Connor, and further found that Croft had ratified the note and mortgage and had waived his defenses and was estopped to deny the validity of the instruments. Decree of foreclosure was entered from which the defendant Croft appeals.

Much of the arguments and briefs is devoted to questions relating to the negotiability or non-negotiability of the note, whether or not a payee of a note can be a holder in due course, and whether the acts of Croft, after he discovered the falsity of the representations and the unauthorized filling of the blanks in the instruments, amounted to ratification of them. We deem it unncessary to discuss any of these questions. The case clearly comes within the operation of the doctrine that where one of two innocent persons must suffer from the wrong of a third, he whose fault made the injury possible must bear the loss. This doctrine is applicable where one who executes an instrument in blank entrusts it to another with authority to fill the blanks and make delivery, and such other fills the blanks in a manner violative of his authority and obtains value thereon from a payee or grantee or other obligee acting in good faith and without knowledge that the instrument was not completed when the maker parted with its possession; and in such case the maker is estopped to deny the validity of the instrument so filled out and delivered. (1 R. C. L., p. 1022, sec. 58, and cases cited; 1 Williston on Contracts, sec. 35; 5 Page on Contracts, sec. 3082; *Johnston Harvester Co. v. McLean*, 57 Wis. 258, 46 Am. Rep. 39, 15 N. W. 177.) Such rule has been applied as to a non-negotiable note (*Neil v. Neil*, 25 Pa. Super. Ct. 605); surety bonds (*J. R. Watkins Co. v. Keeney*, 52 N. D. 280, 37 A. L. R. 1389, 201 N. W. 833; *Riverside Portland Cement Co. v. Maryland Casualty Co.*, 46 Cal. App. 87, 189 Pac. 808; *Cronvold v. Federal Union Surety Co.*, 212 Fed. 908, 129 C. C. A. 428); order on warehouseman (*Union Credit Bank v. Mersey Docks & Harbour Board*, 2 Q. B. 205); deeds (*Ragsdale v. Robinson*, 48 Tex. 379; *Phelps v. Sullivan*, 140 Mass. 36, 54 Am. Rep. 442, 2 N. E. 121; *Garland v. Wells*, 15

Neb. 298, 18 N. W. 132). As to negotiable instruments it has been thought by some courts that the payee in such case is not a holder in due course, and is not protected by the provisions of the Negotiable Instruments Act. An opposite view is taken by other courts. The decisions of this court on this point are perhaps not harmonious, but in none of the cases denying protection to the payee of such a note is the question of estoppel discussed, and, as is pointed out by the author of the comprehensive notes in 15 A. L. R. 437, 21 A. L. R. 1365, 26 A. L. R. 769, and 32 A. L. R. 289, the doctrine of estoppel may be applicable to such cases regardless of the terms of the Negotiable Instruments Act or the interpretation thereof. It has been so held in *Lloyd's Bank, Ltd., v. Cooke*, 1 K. B. 794, 8 Ann. Cas. 182; *Ladd & Tilton Bank v. Small*, 126 Wash. 8, 216 Pac. 862; *Security Bank & Trust Co. v. Foster* (Tex. Civ. App.), 249 S. W. 227; these being cases decided under the Uniform Negotiable Instruments Act.

In *Consolidated Wagon & Machine Co.* v. *Housman*, 38 Ida. 343, 221 Pac. 143, relied upon by appellant, the question of estoppel was not considered, and we do not think the facts of this case require us to harmonize or choose between the doctrine of that case and that of the earlier case of *Redfield v. Wells*, 31 Ida. 415, 173 Pac. 640, which was followed in *Utah State Nat. Bank v. Stringer*, 44 Ida. 599, 258 Pac. 522.

Appellant urges that because of the circumstances under which plaintiff took the note and mortgage, he was charged with notice of the method whereby they were obtained. Although he may have known that the bank was not being operated in accordance with the statutes, and though he may have known that appellant was an accommodation maker, we see nothing in these facts charging plaintiff with notice either that the instruments were obtained by fraud or were wrongfully filled out by the person to whom they had been entrusted.

The judgment is affirmed, with costs to respondent.

Budge, C. J., and Givens and Wm. E. Lee, JJ., concur.