[L. A. No. 12677. In Bank.—June 26, 1933.]

ALICE E. HOCKETT, Appellant, v. PACIFIC STATES AUXILIARY CORPORATION et al., Respondents.

C. F. Culver for Appellant.

Earl L. Banta for Respondents.

PRESTON, J.—Plaintiff, by this action, sues in equity to cancel a promissory note, and deed of trust to secure same, on the ground that each of said documents was forcibly taken from her by her grandson and negotiated to the defendant Pacific States Savings and Loan Company, with-

out authority from or a consideration to her. Said defendant, the payee and beneficiary under said trust deed, cross-complained, alleging the validity of each of said instruments and praying for a decree to establish it. The cause was tried and the court made findings and gave judgment denying relief to plaintiff and sustaining *in toto* the cross-action of defendant. Plaintiff has appealed. The sole question for determination is the sufficiency of the evidence to sustain the conclusion of the court.

At the outset, it may be said that the promissory note is negotiable in form, plaintiff's signature appears thereon and respondent has possession thereof. From these facts there arises a presumption that a valid and intentional delivery by the maker was made and this presumption obtains until the contrary is proved (sec. 3097, Civ. Code). This, of itself, would ordinarily be sufficient to support the court's findings. However, here the court made, among others, the following findings:

"The Court finds that Willis E. Hockett is the grandson of plaintiff and that plaintiff signed and executed said note and Trust Deed and placed them in the hands of said Willis E. Hockett for the purpose of enabling said Willis E. Hockett to use the same for the purpose of raising the principal sum of . . . $1096. The court finds that plaintiff delivered said note and Trust Deeds to said Willis E. Hockett, and further finds that if said Willis E. Hockett later took said note and Trust Deeds from plaintiff, she allowed said note and Trust Deed to go into the possession of said Willis E. Hockett and to be used by him without using ordinary care in that she neglected and omitted to notify either the said payee of said note or the said Trustee under said Trust Deed that said note and Trust Deed were in the possession of said Willis E. Hockett without her consent. The Court finds that said note and Trust Deed and each of them when they went into the hands of said Willis E. Hockett were regular on their faces. The court finds that by reason of the fact that said note and Trust Deed are regular on their faces and were in the possession of said Willis E. Hockett, the grandson of plaintiff, that the defendants relied upon the apparent due execution, genuineness and delivery of said instruments by plaintiff and induced thereby, advanced the sum of . . . $1096.00 . . . in consideration of the receipt of

said note and Trust Deed and received the same for value in the ordinary course of business. . . . ''

From the evidence it appears that plaintiff had two pieces of real property, one encumbered and the other clear. At the instigation of the grandson the note and deed of trust were prepared and signed by her and the promissory note was also signed by the grandson as comaker. The documents were delivered to the grandson to be by him taken to a certain notary for certification and to then be taken for negotiation. But plaintiff contends that she thought that the purpose of the documents was to secure a refunding of the existing mortgage, or change of payee therein, with respect to her encumbered property; that she did not know that it was to encumber her clear property.

The notary, who was a banker and friend, returned with the grandson to plaintiff's residence and there explained to her the nature of the documents and surrendered them to her. At this point, plaintiff testified, respecting the instruments, as follows: ''Well, the boy took it away from me. He just snatched it out of my hands. I did not acknowledge that trust deed before anybody—excepting Mr. Mayland and I never delivered it to the Pacific States Loan Company. I never got anything from them, or anybody else, in connection with that trust deed, or the note—in money or any consideration—or anything else. . . . After Mr. Mayland brought it back to me I stood and held it in my hand, and he (Willis E. Hockett) had come up and grabbed it out of my hands. Mr. Mayland was not there at the time. He just stepped out. I was too dumbfounded to do anything. I didn't understand what was happening to me. I went up to the bank and told Mr. Mayland about it. . . . ''

This occurrence was on May 15, 1928. The grandson was not a witness at the trial, but the plaintiff otherwise showed that a notary's certificate in regular form was placed upon the deed of trust by another and thereafter the grandson began negotiations with respondent loan company in the matter. On the next day a joint escrow was established with the Title Insurance and Trust Company of Los Angeles. The deed of trust was actually filed for record on May 22, 1928, but the consideration did not pass from respondent until on or about September 1, 1928, a period of some three and one-half months after the occurrence hereinabove

related. During this period, by a proceeding in the superior court, a decree of said court was obtained terminating the joint tenancy of plaintiff and her deceased husband in said property. The property was registered under the Torrens Title Act and in the court proceeding just referred to there was also procured a duplicate Torrens title certificate, upon the allegation that the original certificate had been destroyed by fire, which allegation was untrue, because plaintiff held the original certificate herself and produced it in evidence in this cause. The consideration by respondent loan company was disbursed, usually upon orders to which the grandson attached the appellant's name by him. Two checks were made direct to appellant and indorsed in her name, but she denies the genuineness of her purported signatures.

There is much evidence which tends to show that the plaintiff was grossly imposed upon by her grandson. But there is also ample evidence upon which the court could conclude that plaintiff was negligent in many particulars in not taking the proper steps to prevent negotiation of the documents. It is true that the evidence shows that she called upon the first notary, Mr. Mayland, who in turn visited the office of the registrar of titles and asked to be notified if any papers came in affecting the title to said property, but this was far from what should have been done under the circumstances. Said notary at least knew the name of the payee of the note or trustee in the deed of trust. Plaintiff could have found out this information. Plaintiff likewise had access to means of finding her grandson and doubtless, according to her own testimony, saw him upon several occasions before the full consideration passed from respondent and she could have obtained information as to his whereabouts from his father and mother, whose residence was known to her. From a consideration of the whole record, we are unable to say that the court was not justified in finding that plaintiff authorized delivery by the grandson or that her neglect and lack of ordinary care in the premises estopped her from denying such delivery.

The judgment is affirmed.

Curtis, J., Langdon, J., Shenk, J., Seawell, J., Thompson, J., and Waste, C. J., concurred.