[Civ. No. 8978.   First Appellate District, Division One.—December 24, 1934.]

CLARA A. PHILLIPS et al., Appellants, v. CLIFFORD F. REID, INC. (a Corporation), et al., Respondents.

C. J. Enking and E. V. Knauf for Appellants.

Reay, Scharf & Reay and Gibson, Dunn & Crutcher for Respondents.

THE COURT.—Plaintiff brought three actions against the defendants, respondents herein. The first was one to quiet title to certain real property; the second to cancel and declare void a certain promissory note, trust deed and contract of purchase, and the third to enjoin certain municipal court actions. The three actions were consolidated in the lower court and tried as one. In the action to quiet title, plaintiff claimed the property in fee. Defendant Chandler claimed

that the property was encumbered by a trust deed given to secure the payment of a promissory note executed by plaintiff as a down payment in the purchase from defendant Reid company, of certain other real property hereinafter mentioned. Chandler further claimed he purchased the note and deed of trust in the due course of business, in good faith and without knowledge or notice of any defect therein, and the said note had not been paid. In the action wherein it was sought to declare void said note and deed of trust and the contract to purchase the real property in question, and other papers in connection therewith, plaintiff alleged that she signed all of said instruments against her will and by reason of her confusion and nervousness and because of undue influence exercised upon her by defendant Reid company. She further alleged that the trust deed, note and contract of purchase were, at the time of signing, all blank in all particulars save the printed portions thereof; that said blanks were filled in by the Reid company without her knowledge or consent, and the day following the signing thereof she repudiated all of them. The third action was one wherein plaintiff sought to enjoin certain municipal court actions, which were actions in unlawful detainer to recover possession of the real property covered by the deed of trust after sale and for a deficiency on the note. Judgment went in favor of defendants in all three actions. Three separate appeals are taken with one set of briefs. We will discuss all three appeals together.

The court found in effect that plaintiff agreed to buy and the defendants agreed to sell the property in question and that she executed her promissory note in favor of Reid company, and the trust deed securing said promissory note; that the Reid company filled in the blanks in the deed of trust with the consent and authority of plaintiff; that plaintiff did not sign the instruments against her will or as the result of being confused, or that she did not know their import; that she was not of weak mind, and no undue influence was exercised by the defendants to induce her to sign the same. Appellant claims that the findings are not supported by the evidence. There is no merit in this contention. The facts show that on June 18, 1930, plaintiff, a widow seventy-three years of age, accompanied a neighbor of hers on a trip to Hollywood Riviera, a real estate sub-

division, the legal title of which was vested in respondent Security-First National Bank, the same being held in trust for the Reid company. The tract was being sold to the public by respondent Reid company. The trip to the property was made by plaintiff in the car of one James Overton, a salesman of the company. When the party arrived at the tract Overton drove over the same, showed plaintiff several different lots, and explained their location. Plaintiff expressed herself as being impressed with the property and stated that if she bought a lot it would be a business one. She was shown a particular business lot and expressed her interest in it but stated she was not satisfied that she had enough money to buy it. Overton informed her that as she owned real property the matter might be worked out in some manner, and he introduced plaintiff to a Mr. Boyles, an agent of the company, and asked him if he could make terms so that plaintiff could purchase the same. Overton and Boyles then discussed the question of making a loan to plaintiff upon property owned by her in Huntington Park. It was finally agreed by Boyles to advance plaintiff the sum of $4,000 on her property with which to make the purchase. The following instruments were then drawn up and executed: (1) a trust deed, executed by plaintiff as trustor, on a regular form of defendant Title Guarantee and Trust Company, as trustee; (2) a promissory note on a printed form of the same company, the amount of which, and the maturity date of which, were filled in by pen and ink and then signed by plaintiff. The note referred to the fact that it was secured by a trust deed; (3) a so-called offset statement containing, among other things, certain printed recitals above the signature of plaintiff to the effect that the maker of the note secured by the trust deed received full consideration therefor and that there were no offsets, claims or defenses against the same. This offset statement was blank as to the description of the property and the description of the note secured by the trust deed; (4) a letter of confirmation; (5) a contract of purchase on a printed form, in which there was left blank the description of the property purchased, the terms and times when the consideration was paid, and the date; (6) a sales slip which was completely filled in before being signed by plaintiff. After these papers were signed Mr. Boyles informed plaintiff that

the agreement of sale and all the papers would be filled in in conformance with the sales slip, which contained a complete and binding agreement of sale, and plaintiff authorized Boyles to perform this task. Boyles was a notary and he attached a certificate to the trust deed as being executed by plaintiff. All the papers were then sent to the main office of the Reid company, which company sent a letter to the Title Guarantee and Trust Company, trustee, inclosing the trust deed involved and authorizing them to record it. There is no evidence in the record that the agents of the Reid company exerted any undue influence upon plaintiff to execute the different documents, and in fact there is no allegation as to the facts constituting the alleged undue influence, the complaint containing the mere allegation of undue influence. Plaintiff in her testimony does not claim that any false statements were made to her concerning the property, nor are there any statements by anyone that she was induced to make the purchase. On the contrary, so far as the record shows, very little if anything was said concerning the purchase, either by the agents or plaintiff, and no complaint is here made that plaintiff was induced to make the purchase by any representations on the part of the agents, and in fact she testified that she did not know why she had entered into the contract. The day following the sale, Overton met plaintiff pursuant to her promise to furnish the Reid company with an abstract of her Huntington Park property. She then indicated to Overton that she did not intend to go on with her purchase, or furnish the abstract. Overton informed plaintiff at this time that he could make a profit for her on a resale of the lot. This is the only evidence of any representations of any kind or character that were ever made at any time to plaintiff either before or after the completion of the contract.

After plaintiff had purchased the property, the Reid company offered the note and trust deed for sale to defendant Chandler. After examination of the transaction, Chandler purchased the same and took title thereto. The evidence is clear that Chandler was a *bona fide* holder in due course, and the court so found. The evidence fully supports the findings of the trial court.

Plaintiff presents the argument that there was no complete contract of sale for the reason that the Reid com-

pany was not bound by any contract oral or written, as Overton was a mere salesman who had no authority to make terms or enter into a contract for the Reid company, and plaintiff withdrew from the deal before it was confirmed. So far as the evidence shows, Boyles, the agent of the company, had full power to enter into the contract, and the sales agreement signed by plaintiff constituted a valid and binding contract. Moreover, no question was raised by the pleadings or at any time during the trial as to the authority or lack of authority on the part of Boyles to sign on behalf of the Reid company. No testimony was introduced upon the subject and it was not an issue in the case.

█ The additional argument is presented that as the description of the property, the obligation secured and the name of the trustor were not filled in at the time plaintiff signed the deed of trust, it was void, as no written authority was given to insert the omissions. The court found that the agent had oral authority to fill in the blanks, and the evidence amply supports this finding. Appellant does not question the fact that the agent was orally instructed to perform this act, it being her contention that there could be no valid verbal authority so to do. Even conceding this to be true as against the original parties, it is not true as against an innocent purchaser for value. █ Where a person executes an instrument containing blanks, and entrusts it to a third person, with power express or implied to fill in the blanks in a certain manner, a *bona fide* holder will be protected, and the instrument is enforceable in his hands. This rule is not restricted to negotiable instruments, but extends to nonnegotiable instruments as well. (*Cassetta* v. *Baima,* 106 Cal. App. 196, 200 [288 Pac. 830]; *Moore* v. *Croft,* 47 Idaho, 572 [277 Pac. 423]; *Rancho San Carlos* v. *Bank of Italy Nat. Trust & Sav. Assn.,* 123 Cal. App. 291 [11 Pac. (2d) 424].) The rule applies not only in jurisdictions which recognize the rule that parol authority is sufficient to authorize the filling in of blanks in a sealed instrument, but also in the jurisdictions in which the rule is adopted that such authority must be under seal. (1 Ruling Case Law, secs. 58, 59, pp. 1022–1024; *Dolbeer* v. *Livingston,* 100 Cal. 617 [35 Pac. 328]; Civ. Code, sec. 3095.) Under such circumstances appellant is estopped to deny the validity of the note and trust deed. (*Riverside Portland Cement Co.* v.

*Maryland Casualty Co.*, 46 Cal. App. 87 [189 Pac. 808]; *Hockett* v. *Pacific States Auxiliary Corp.*, 218 Cal. 382 [23 Pac. (2d) 512].) Here, there is nothing in the record to show that the execution of the instruments was not the free and voluntary act of plaintiff, or that she did not sign the same with full knowledge of the legal effect of such documents. The case does not involve a situation where the questioned instruments might have been obtained by theft.

■ And, finally, appellant, in support of her appeal from the order denying her an injunction to prevent a multiplicity of suits, claims that this relief was improperly denied. No showing was made that the granting of the injunction sought would prevent a multiplicity of suits or that appellant would suffer any damage or injury by the trial of the municipal court actions. Nor was there any showing that the remedies pursued were not proper, or that cause existed for the injunctive relief sought.

■ In the action to quiet title, the evidence is sufficient to support the finding that respondent Chandler is the owner of the property in question, free and clear of all claims of plaintiff.

The judgments are affirmed.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 21, 1935.