[Civil No. 3586.   Filed January 13, 1936.]

[53 Pac. (2d) 734.]

GUARANTEE TITLE & TRUST COMPANY, as Administrator in Arizona of the Estate of C. E. Green, Deceased, and AETNA CASUALTY & SURETY COMPANY, a Corporation, Appellants, v. BABBITT BROS. TRADING COMPANY, a Corporation, Appellee.

Mr. Leo T. Stack, for Appellants.

Messrs. Norris & Patterson and Mr. James E. Babbitt, for Appellee.

LOCKWOOD, C. J.—This is an appeal by Guarantee Title & Trust Company, as administrator in Arizona of the estate of C. E. Green, deceased, and Aetna Casualty & Surety Company, a corporation, hereinafter called appellants, from a judgment in

favor of Babbitt Bros. Trading Company, a corporation, hereinafter called appellee.

The facts out of which the action grew may be stated as follows: C. E. Green, hereinafter called decedent, entered into a contract with the town of Flagstaff for the construction of a reservoir, and subcontracted the work of excavation thereof to H. T. Willis & Son, a copartnership. The work began about April 1, 1925, and proceeded until November, when Willis quit the work and brought suit against decedent, recovering a judgment therein. This court reversed the judgment, and the case was remanded for a new trial upon decedent's cross-complaint. This new trial, however, was never had. In June, 1926, appellee brought this suit in the superior court of Coconino county against decedent. Its complaint was in two counts, the first for goods, wares, and merchandise sold and delivered by it to decedent; the second covered the same articles but set up that they were of a lienable character, and therefore made decedent's bondsman on his original contract, Metropolitan Casualty Ins. Co., a party also. The amount claimed as due in each count was $5,504.76, being the balance after some $9,000 of credit had been deducted from the original charges of $14,000. At the time of the commencement of the action a writ of garnishment was sued out against the town of Flagstaff to hold part of the contract price due decedent from the town on his contract for the construction of the reservoir. The town answered, and the garnishment was released by a dissolution bond attempted to be given under paragraph 4264, Revised Statutes of Arizona 1913, on which Aetna Casualty & Surety Company, one of the appellants herein, was surety. Shortly after the commencement of this action, Green died and Guarantee Title & Trust Com-

pany was appointed and qualified as his administrator in Arizona. Thereupon an amended complaint was filed by appellee in two counts as above, which repeated the allegations of the original complaint in regard to the sale of the goods to decedent, and then set up his death, the appointment of an administrator, the publication of notice to creditors, the presentation to the administrator of a claim for the value of the goods, and its rejection thereof, the garnishment and the giving of the dissolution bond thereon, and then concluded in each count with the following allegation:

"That in this action plaintiff relies upon said bond for the recovery of any judgment secured herein and all recourse against any other property of the estate is expressly waived."

The Aetna Casualty & Surety Company had not been made a party to the action by appellee, but hearing of the amended complaint, intervened and demurred to the amended complaint for many reasons. The particular issues which were raised by the demurrer, and were repeated in the answer, were that the death of Green during the pendency of the action dissolved the garnishment, and that appellee's waiver of recourse against the Green estate was a release of intervener as surety. The administrator answered by a demurrer and a general denial. The demurrers were argued, submitted, and taken under advisement, but were never determined by the court. Some seven months thereafter appellee filed a second amended complaint, which was identical with the first amended complaint except that the allegations above quoted, waiving recourse against the assets of the estate and claiming a reliance upon the bond, were eliminated. Thereupon the administrator and the intervener demurred to this last-named complaint on the ground

that it did not state a cause of action, or that, if it did, it amounted to the commencement of an action against the administrator on the rejected claim therein referred to, which was barred by the statute of limitations. They also moved to strike out the second amended complaint for the reason that by its elimination of the waiver of recourse contained in the first amended complaint, it substantially changed the issue and cause of action, and that such waiver was conclusive and amounted to an irrevocable election of remedies and a release of the estate, and could not be withdrawn except for fraud or mistake of fact and only then by leave of court.

These demurrers and motions to strike were denied, and the case went to trial upon the second amended complaint. At the commencement of the trial appellee dismissed the second count, which was based upon the lienable character of the goods, and the issues were formed upon the open account for goods, wares, and merchandise.

There are five assignments of error which we shall consider as seems advisable. Assignment No. 2 reads as follows:

"The court erred in denying appellants' motion to strike the second amended complaint, and in overruling their demurrers thereto, because the waiver of recourse was conclusive and could not be retracted."

It is contended by appellants that by its first amended complaint appellee had expressly waived any recourse against the general assets of the estate of decedent, and thereby conclusively elected its remedy, and that the second amended complaint was an attempted repudiation of this election.

Let us consider what remedies appellee had to elect between after the death of Green. First, it might present its claim to the administrator. If the

claim were presented and approved, it could (a) wait for its payment in due course of administration and abandon any attempt to enforce a lien against the bond; or (b) it might at any time before the running of the statute of limitations on its alleged lien have brought the ordinary suit to foreclose the same, and applied the proceeds to the satisfaction of the claim, any deficiency being subject to payment in the due course of administration as an ordinary claim. If the claim was disallowed by the administrator, it could, within three months thereafter, bring a suit to compel its approval. If it failed to establish its claim, all rights either against the estate or against the security would be gone. If it established the claim, it could foreclose its lien and hold any deficiency as an ordinary claim against the estate, as aforesaid, or wait for payment out of the general assets. Second, if it had any doubt as to its ability to establish a general claim against the estate, either before the administrator or by suit, it might have refused to present the claim to the administrator, and, by expressly waiving any recourse against any other property of the estate, have litigated the validity of its lien. Sections 3989, 3990, 3993, Revised Code 1928; *Lisitzky* v. *Brady,* 38 Ariz. 337, 300 Pac. 177; *Hibernia Sav. & L. Soc.* v. *Conlin,* 67 Cal. 178, 7 Pac. 477; *Consolidated Nat. Bank of San Diego* v. *Hayes,* 112 Cal. 75, 44 Pac. 469; *Moran* v. *Gardemeyer,* 82 Cal. 96, 23 Pac. 6. The amended complaint showed affirmatively that the claim had been presented to the administrator and rejected and appellee had, therefore, lost the right to proceed against the security only, under section 3990, *supra.* Such being the case, the clause of the amended complaint wherein it attempted to waive recourse against the other property of the estate and rely upon the bond only for the

recovery of its judgment was not an election of remedies. But appellants urge that although it might not be an election of remedies, it was, nevertheless, a waiver of a substantive right which could not be revoked. We have discussed the essential elements of waiver in the cases of *Southwest Cotton Co.* v. *Valley Bank,* 26 Ariz. 559, 227 Pac. 986, 988, and *Davis* v. *Standard Accident Ins. Co.,* 35 Ariz. 392, 278 Pac. 384, 386. In the first case we say ''a waiver is a voluntary and intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right,'' and in the last one, ''waiver must be intentional and upon a consideration, or the act relied on must be such as to constitute an estoppel.'' It is not necessary that there be both consideration and estoppel. Either is sufficient, but one at least must exist to make a valid and irrevocable waiver. Obviously there was no consideration for the alleged waiver of recourse against the general property of the estate of decedent, and there is nothing to show that by reason of the waiver appellants had changed their position to their detriment, one of the essential elements of an estoppel. We hold, therefore, that the trial court did not err in refusing to sustain the demurrer to the second amended complaint or to strike it. This disposes of the objection that the cause of action was barred by the statute of limitations. Since the amended and second amended complaints both set up an action under section 3989, Revised Code 1928, which was filed within the three months allowed by the statute, there was no change of cause of action, and the statute of limitations had not run.

The next assignment of error which we consider is available, if at all, only to appellant Aetna Casualty & Surety Company. It is, in substance,

that the death of Green prior to the rendition of judgment against him dissolves the garnishment, releases the garnishee, and absolves the surety from liability on the dissolution bond. It is admitted that there is a serious conflict in authority on this question. This court has never specifically passed upon the question of the effect of the death of the principal debtor in a garnishment proceeding, but it has determined what effect it will have upon a writ of attachment in the case of *Wartman* v. *Pecka,* 8 Ariz. 8, 68 Pac. 534. We discuss therein the case of *Myers* v. *Mott,* 29 Cal. 359, 89 Am. Dec. 49, whose reasoning is similar to that of most of the cases cited by appellants on this point, and declined to follow it. While it is true that *Myers* v. *Mott, supra,* was a case involving an attachment and not a garnishment, yet the principles applying to both are on this point in substance the same. In the case of *Hawley* v. *Isaacson,* 117 Wash. 197, 200 Pac. 1109, 1111, 21 A. L. R. 268, the court said:

"While it is true that under our statutes the plaintiff does not obtain by his garnishment any fixed and enforceable lien on the money garnished, till he shall have obtained judgment against the defendant, yet he does, prior to judgment, obtain a prior right which cannot be defeated, except by failing to obtain his judgment. He may not have a specific lien by virtue of his garnishment, but he certainly acquires a right in the thing garnished. The very authorized purpose of the garnishment is to hold the thing garnished as security for the payment of any judgment he may obtain. Under the statute the garnishee may not lawfully dispose of the thing garnished, but must hold it subject to the order of the court; the debtor may not collect, assign, or in any way dispose of the thing garnished. No person by a subsequent garnishment or proceeding can acquire a right in the subject of the garnishment, which will be senior or prior to the rights of the first garnisher. Why, there-

fore, upon principle, should the mere death of the debtor deprive the plaintiff of a right of which he could not be deprived during the life of the debtor? Why should the creditor be deprived of the fruits of his caution and thrift, only because of the debtor's death? The legal representatives should take the property of the deceased debtor subject to the inchoate lien or rights which the creditor obtained by garnishment against the same property in the hands of the live-debtor. If, without express provisions of statute, death will not defeat a mortgage, or mechanic's or any other kind of lien, why should it defeat the inchoate lien or statutory right acquired by garnishment? A receiver will always take property subject to all mortgages, liens, rights, and equities. He takes it in just the condition he finds it. We know no good reason why the same rule should not apply in a case of this character."

We think the rule thus stated is in harmony with justice and the more modern decisions and adopt it.

■■ This brings us to the question of whether the evidence sustains the findings of the trial court. Appellee must recover, if at all, upon the theory that decedent was the original debtor, and not on the ground that he guaranteed the debt of Willis & Son, for admittedly there was no such guaranty in writing as would bring the claim within the statute of frauds. The only direct evidence on this point is the statement of one of appellee's bookkeepers. This evidence is as follows:

"Q. What conversation took place at that time? A. Well, Mr. Green asked for Mr. Moran and I told him Mr. Moran wasn't in the office. He then explained to me that Mr. Willis was doing the excavating work for him on the reservoir job and asked me to tell Mr. Moran to give Mr. Willis whatever he needed but that he wanted the account kept separate from the C. E. Green account for the purpose of accounting only. . . .

"Q. Can you tell us exactly what Mr. Green had to say? A. As I remember the conversation, he just simply asked for Mr. Moran and when I told him that he wasn't there he said for me to tell Mr. Moran that Mr. Willis was going to do the excavating work and to let him have whatever he needed and keep the account separate.

"Q. Separate from what? A. The regular C. E. Green account.

"Q. Were any arrangements made for payment? A. No, he made no arrangements with me.

"Q. Was anything said whether payments would be made by Mr. Willis or not? A. No, there wasn't."

This conversation was reported by the bookkeeper to appellee's manager, and from that time on goods were delivered to Willis in accordance with the complaint. The account was carried in the name of H. T. Willis & Son, and all payments thereon were made directly by Willis to appellee, and never by decedent. On the other hand, appellee's manager testified that the statements of the Willis account were mailed to Green, and that the latter never denied responsibility for the account at any time, and that appellee always considered Green the principal debtor. The original conversation, as testified to by the bookkeeper, is somewhat ambiguous in its nature, and the evidence shows circumstances which would justify either an inference that Green guaranteed the Willis account, or that he himself became the original debtor. The trial court drew the latter inference and found Green was at all times the principal debtor. When the evidence is such that a reasonable man could draw either one of two inferences of ultimate fact therefrom, we will not disturb the conclusion reached by the triers of fact. *Collins* v. *Collins,* 46 Ariz. 485, 52 Pac. (2d) 1169, just decided; *Moeur* v. *Farm Builders Corp.,* 35 Ariz. 130, 274 Pac. 1043.

There was some stress laid on the form of the bond, but we think it unnecessary to discuss this point.

Appellee admits the interest on the principal sum was wrongly computed and is excessive in the sum of $724.20. The judgment of the trial court is modified by reducing it to $8,312.18, and as so modified is affirmed. Appellants will recover their costs in this court.

McALISTER and ROSS, JJ., concur.