190 P.2d 497

In re BRANDT'S ESTATE.

BRANDT v. BRANDT.

No. 4970.

Supreme Court of Arizona.

March 1, 1948.

Krucker & Fowler, of Tucson, for appellant.

Fred W. Fickett, William S. Dunipace and Robert S. Tullar, all of Tucson, for appellee.

UDALL, Justice.

This is an appeal from an order and judgment of the lower court directing the executrix of the estate of Fritz .T. Brandt to pay Leta F. Brandt, the decedent's purported widow, a family allowance.

The essential facts are these: On March 17, 1946, Fritz T. Brandt, a marine engineer, died aboard ship at Poti, Russia; he was survived by two women, each of whom claimed to be his lawful widow, Leta F. Brandt, hereinafter called the appellee, and Maude A. Brandt. By a will dated approximately a year prior to his death Brandt left all of his property, consisting largely of $4,400 in cash, to his estate, and named his daughter, Clarine G. Brandt, the executrix. The will was admitted to probate and the named executrix duly qualified.

The decedent and Maude A. Brandt were married in the year 1911. In 1943 he brought an action for divorce in the District Court of Harris County, Texas, and she was constructively served in Arizona. She entered no appearance, and on April 27, 1943, a decree was entered by the Texas court purporting to divorce the parties. The decedent then returned to Tucson where on May 4, 1943, he entered into a marriage ceremony with the appellee. On August 8, 1946, the appellee, as surviving widow, petitioned the estate for a family allowance, and asked that the property exempt from execution be set aside to her. The executrix (appellant) filed an amended

response to this petition in which she attacked the validity of the marriage between the decedent and the appellee; the executrix contended that the decedent did not acquire a domicile in Texas; that the Texas court did not have jurisdiction to render him a divorce decree, and that therefore the Texas decree was wholly void and invalid and the subsequent marriage of the decedent and the appellee in Arizona was unlawful. The executrix asked that the court invalidate the Texas divorce, declare Maude A. Brandt to be the lawful wife of the decedent, and deny the appellee's petition for a family allowance.

At the request of the executrix the issues thus framed by the petition and answer were set down for trial before a jury. At the close of the trial the court directed a verdict for the appellee on the ground that the executrix was estopped to question the validity of either the Texas divorce or the subsequent remarriage. Whereupon this appeal was taken by the executrix.

Her six assignments of error all bear on the proposition that the plea of estoppel was not available to the appellee under the record here before us. She contends: (a) that the defense of estoppel to be available must be affirmatively pleaded by way of answer or other responsive pleading, before trial, where the necessity of such defense appears on the face of the pleadings; (b) that it was error for the court to permit the appellee to amend her petition and set up the affirmative defense of estoppel

under the guise of a trial amendment to conform to the proof; and (c) that the court should have held that the appellee was bound by a pre-trial stipulation constituting a waiver of the defense of estoppel.

Therefore, the questions before us involve procedural matters, for if the appellee's plea of estoppel was properly before the court there is no merit to this appeal. At the outset it should be clearly understood that:

"There is such a privity between a decedent and the personal representative of his estate that an estoppel arising by reason of the decedent's conduct may be asserted against his representative." 19 Am.Jur., Estoppel, sec. 157, p. 813; see also 31 C.J. S., Estoppel, § 132, and Moore v. Croft, 47 Idaho 572, 277 P. 423, 425.

Certainly the decedent, if living, could not be heard to question either the validity of the Texas divorce procured by him or the validity of his second marriage. Nor is there any doubt but that in an appropriate proceeding an Arizona court would have jurisdiction to question the validity of the Texas divorce decree. Such was the holding of the Supreme Court of the United States in the second case of Williams v. State of North Carolina, reported in 325 U.S. 226, 65 S.Ct. 1092, 89 L. Ed. 1577, 157 A.L.R. 1366.

There is no dispute between counsel as to the principles of law above stated; their contentions vary only where the procedure followed by the trial court is concerned. It should be noted, too, that the rules of civil procedure govern in probate proceedings. Sec. 38-2007, A.C.A. 1939; In re Guardianship of Sorrells, 58 Ariz. 25, 117 P.2d 96.

The trial court in effect held that the executrix was estopped from making a collateral attack on the Texas divorce decree. The executrix first contends that the appellee's failure to affirmatively plead estoppel made this defense unavailable to her. The executrix relies on section 21-406, A.C.A.1939, for the proposition that the defense of estoppel is not available to a party unless it is affirmatively pleaded by way of answer or other responsive pleading. This section reads: *"Affirmative defenses.*—In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction * * * estoppel * * * and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."

Ordinarily, the issue which must be pleaded as an affirmative defense will be contained in the answer. In this case the appellee (who filed the first pleading) was required to plead her affirmative defense only if a reply was absolutely necessary under the rules of procedure as it is not incumbent upon the party filing a complaint

to anticipate an affirmative defense which the answer may disclose. If it was not mandatory under the rules that the appellee file a reply, it can hardly be said that any affirmative defense was waived by a failure to enter a reply. Section 21-401, A.C.A.1939, which is rule 7(a), explicitly enunciates the controlling rule: *"Pleadings allowed.*—There shall be a complaint and an answer; *and there shall be a reply, if the answer contains a counterclaim denominated as such;* * * *. No other pleading shall be allowed, except that the court *may* order a reply to an answer or a third-party answer." (Emphasis supplied.)

The language of this section clearly declares that a reply is mandatory only when the answer contains a counterclaim denominated as such. Moore's text on these rules fully explains the purpose of, and reason for, this particular rule: "A reply is *mandatory* only where the answer contains a counterclaim (which includes set-off) *denominated* as such. The difficulty of drawing a clear cut distinction between counterclaim and certain affirmative defenses necessitated the provision as to denomination. A rule of thumb is provided. The plaintiff is not put to the peril of correctly analyzing the matter set forth in the answer to determine whether he must reply. Thus although the new matter really constitutes a counterclaim, nevertheless, the plaintiff need not reply unless that matter was *denominated* as a counterclaim, and should not unless ordered to do so by the court in the exercise of its discretion. * * *"

Moore's Fed. Practice, vol. 1, sec. 7.01, Pleadings. See also 17 Hughes Fed. Practice, sec. 19514.

Here the executrix' answer designated amended response, contained no denominating reference to a counterclaim, and the rule expressly provides that a counterclaim, to be recognized as such, must be labeled "counterclaim" in the pleading of which it is a part. The executrix strenuously objects to the rigor of this rule stating: "No pleading ever counterclaimed or cross-claimed more emphatically than did our response * * * it was a claim, or at least a counterclaim, for a declaratory judgment, *no matter what the pleading was denominated."* The rule, however, is intended to place a burden on the party counterclaiming—a burden which the executrix has not borne. In a situation such as we have before us, the failure to denominate a counterclaim as such is decisive. The operation of section 21-401, supra, which is rule 7(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, is fully explained in 17 Hughes Fed. Practice, sec. 19514: "The counterclaim, however must be 'denominated as such' before a reply to it is necessary. In this provision the rule differs from the old Equity Rule and from the state codes, which are worded similarly to the Equity Rule and provide generally that a reply is required to a set-off or counterclaim without requiring that it be denominated as such. Under the plain wording of the rule, the burden of determining whether given mat-

ter is a defense or a counterclaim is laid upon the party pleading it and not upon the party against whom it is pleaded, so that if a counterclaim is not denominated as such, the plaintiff need not reply to it. * * *"

Under these circumstances, the appellee was not required to reply to the executrix' answer, and could properly assert the affirmative defense of estoppel at the trial of the cause. It is provided in sec. 21-429, A.C.A.1939, that: "* * * If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, he may assert at the trial any defense in law or fact to that claim for relief."

■ Holding, as we do, that the defense of estoppel was available to the appellee, we must also hold that the trial court had power under sec. 21-449, A.C.A.1939, to allow the pleadings to be amended to conform to the evidence.

The minutes of the court discloses that on August 24, 1946, when the petition for family allowance first came on for hearing before the court, these proceedings were had:

"It is stipulated by and between counsel that the court may consider this morning the right of the executrix to attack collaterally the validity of a certain decree of divorce secured by the deceased in the State of Texas in the year 1943; * * *.

"Argument by counsel followed for respective parties.

"The court stated that as far as this court is concerned the petitioner's objection to the jurisdiction of this court to consider the collateral attack upon the Texas decree of divorce is overruled on the authority in the case of Williams v. North Carolina, decided in the U. S. Supreme Court; * * *."

The matter was then set for trial before a jury on December 5, 1946. The executrix contends that the above-quoted stipulation amounted to an agreement between court and counsel that the *only issue* to be determined was whether the court had jurisdiction to consider the validity of the Texas divorce decree, i. e., whether or not a collateral attack could be made. She urges that the stipulation was so phrased that it excluded all other issues, including estoppel, and that by agreeing to this exclusion the appellee waived the defense of estoppel.

■ The general rule as to the construction of stipulations is well stated in 50 Am.Jur., Stipulations, sec. 8, p. 609: "As a general rule, stipulations should receive a fair and liberal construction, in harmony with the apparent intention of the parties and the spirit of justice, and in the furtherance of fair trials upon the merits, rather than a narrow and technical one calculated to defeat the purposes of their execution. The terms of a stipulation should not, however, be so construed as to extend beyond that which a fair construction justifies. In all cases of doubt, that construction should

be adopted which is favorable to the party in whose favor it is made. A stipulation must be construed in the light of the circumstances surrounding the parties and in view of the result which they were attempting to accomplish. In seeking the intent of the parties the language used will not be so construed as to give it the effect of an admission of fact obviously intended to be controverted, or the waiver of a right not plainly intended to be relinquished."

 With these principles in mind we shall endeavor to ascertain the true meaning and effect of the stipulation. It must be evaluated in light of the circumstances surrounding the parties and the result they hoped to achieve by submitting it to the court. It is readily apparent from the court's ruling that the jurisdictional matter was the only preliminary legal question the parties intended to present, under the stipulation, for determination. A negative ruling, contrary to the Williams case, would have terminated the contest of the petition then and there. Evidently neither the attorneys nor the court gave any consideration to the question of estoppel. The stipulation is silent on the subject of estoppel, nor can it be said that there is any express waiver of such a defense. It must be remembered that:

"Waiver is a voluntary and intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right * * *."

Guarantee Title & Trust Co. v. Babbitt Bros. Trading Company, 47 Ariz. 47, 53 P. 2d 734, 736. See also 67 C.J., Waiver, 289.

It would not be substantial justice to the parties for this court to torture the stipulation into proportions which its drafters did not intend it should have. A court should not hold that there has been a waiver of valuable rights where the circumstances show that any so-called "waiver" was involuntary and unintended.

The trial court correctly construed the stipulation. There was no waiver of appellee's right to plead estoppel against the executrix.

Judgment affirmed.

STANFORD, C. J., and LaPRADE, J., concurring.