270 P.2d 1079

**In re CASSIDY'S ESTATE.**

**CASSIDY v. DOWD et al.**

No. 5664.

Supreme Court of Arizona.

June 1, 1954.

Lewis, Roca, Scoville & Beauchamp, by Harold R. Scoville and Walter Cheifetz, Phoenix, and Rodes K. Myers, Bowling Green, Ky., for appellants.

Rawlins, Davis, Christy, Kleinman & Burrus, and R. H. Armstrong and Keith A. Haien, Phoenix, for appellees.

UDALL, Justice.

Petitioner-appellant Ellen Cassidy filed a petition in the court below to revoke the probate of the will of her brother, Joseph D. Cassidy, deceased. The executrix and principal beneficiary of the will, respondent-appellee Mary G. Dowd, and respondent-appellee Andrew Kieffer, moved to dismiss the petition for failure to state a claim, which motion was granted. Judgment was entered against petitioner, and she appeals. The case presents several novel questions of law, and we appreciate the fine briefs counsel have filed in the matter.

Joseph D. Cassidy died November 8, 1947, at Laveen, Maricopa County, Ari-

zona. He left an estate of personal and real property valued in excess of $100,000, and surviving him were his sisters Ellen Cassidy (petitioner here), Mary Hogan, and Katie McCormack, his brother William Cassidy, and his nephew Andrew Kieffer, all of whom were nonresidents of Arizona.

On December 1, 1947, respondent Mary G. Dowd, having been nominated as executrix, petitioned for probate of the last will of the decedent, and two weeks later it was ordered that the will be admitted to probate. The will bequeathed $4,000 to petitioner, $2,500 to Mary Hogan, $2,500 to Katie McCormack, $5,000 to William Cassidy, $8,000 to Andrew Kieffer, and a total of $1,250 to three Roman Catholic charities. The balance of the estate was given to respondent Mary G. Dowd by specific devise and bequest, and by grant of the residue of the estate. The latter was in nowise related to decedent.

The estate was administered in due course, and the bequests to the surviving relatives of the deceased and to the charities were paid. By receipt dated February 25, 1949, petitioner acknowledges payment of $4,000 to her. Two weeks later the final account and report and petition for distribution was filed, and on March 25, 1949, there was entered a formal decree approving the final account and report, ordering distribution of the residue of the estate to respondent Dowd, and ordering discharge of the executrix upon the filing of the proper vouchers.

So things remained, until the 20th of July, 1950, when petitioner filed in the probate action a contest of the will and petition to revoke the probate thereof. As authority for such petition she relied upon Section 38–221, A.C.A.1939, which declares:

"If no person, within one (1) year after the probate of a will, contests the same or the validity thereof the probate of the will is conclusive; provided that infants and persons of unsound mind, may bring such contests within one (1) year after their respective disabilities are removed, and *a like contest to cancel a will for forgery or fraud may be brought within one (1) year after the discovery of such forgery or fraud, and not afterward.*" (Emphasis supplied.)

The petition alleged in detail the facts heretofore recited, and then alleged fraud as follows:

"V.

"That the paper filed by the respondent Mary G. Dowd as the last will and testament of Joseph D. Cassidy and admitted to probate on December 15, 1947, was not the last will and testament of the said Joseph D. Cassidy, for the reason that at the time of the execution of the paper he did not possess a sound and disposing mind and at the time of the execution of said paper did not possess such mental capacity as to enable him to know the natural objects of his bounty, his obligations to them, the char-

acter and value of his estate, and to dispose of it according to a fixed purpose of his own, and for the additional reason that at the time of the execution of said paper and throughout the last illness of the decedent, the respondent Mary G. Dowd attended him as his nurse and taking advantage of the intimate and confidential relationship existing between her and the decedent, and through undue influence, menace and duress exercised by said respondent on said decedent, and through fraudulent representations made by said respondent to decedent, she so influenced him as to destroy his free agency at the time of executing the said paper and caused him to go against his will in executing said paper, and in particular in making the provisions therein by which the respondent Mary G. Dowd was made the beneficiary of the major portion of the decedent's estate.

## "VI.

"That the respondent Mary G. Dowd well knew at the time she filed said paper that said paper was not the last will and testament of the decedent because of the facts alleged in paragraph V, all of which facts were well known to her, but that she nevertheless filed said paper with the fraudulent purpose of gaining for herself the major share of the estate of Joseph D. Cassidy and of depriving the petitioner of her just rights in said estate as an heir of the said Joseph D. Cassidy, and of depriving the respondents, Mary Hogan, Katie McCormack, and William Cassidy of their just rights as heirs of the said Joseph D. Cassidy.

\* \* \* \* \* \*

## "X.

"That the petitioner, Ellen Cassidy, did not discover the fraud perpetrated in procuring the execution of the paper alleged to be the last will and testament of Joseph D. Cassidy, as hereinbefore alleged, until the month of July, 1949."

It was further alleged that the notices of the hearing on the petition for probate were never received by petitioner, through the fraudulent machinations and collusion of Mary Dowd and Andrew Kieffer, in keeping them from being mailed or preventing their delivery after mailing.

In January, 1951, respondents moved to strike portions of the petition, and moved that the allegations of fraud therein be made more definite and certain by setting forth with particularity the facts and circumstances relied upon to establish fraud, to enable respondents to prepare a responsive pleading. Unfortunately, for some reason not disclosed by the record, neither of these motions were ever ruled on. Together with these motions there was filed respondents' motion to dismiss and demurrer, wherein respondents moved the court to dismiss the petition to revoke probate for the following five reasons:

(a) The petition did not state a claim for relief;

(b) It appeared from the face of the petition and the records and files in the case that the petition was barred because not commenced within one year after the admission of the will to probate;

(c) The petition failed to show it was filed within one year from the discovery of the alleged fraud;

(d) The decree of distribution was regularly entered in the probate cause, and no appeal was taken therefrom, hence it was final and concluded the rights of all parties, and

(e) Petitioner by accepting and retaining the $4,000 bequeathed to her by will, ratified and confirmed the terms and conditions of the decree of distribution.

An order granting the motion to dismiss was entered January 11, 1952, but there is no specification therein, nor does the record before us otherwise reveal the ground or grounds upon which the motion was granted. Upon motion of respondents, on March 5, 1952, the contest was in effect disallowed and judgment was entered decreeing the will of Joseph Cassidy to be valid in all respects and properly admitted to probate, and allowing attorney's fees to respondents. This appeal followed.

Petitioner assigns as error the entering of this judgment upon the grounds that her petition to revoke probate of will stated a claim upon which relief can be granted.

Being in the dark as to the basis for the court's judgment, we must necessarily consider each of the grounds specified in the respondent's motion, supra.

## Res Judicata

There is no doubt that "All probate proceedings and judgments rendered therein are in the nature of proceedings in rem, and a final decree of distribution has the force and effect of a judgment in rem." Shattuck v. Shattuck, 67 Ariz. 122, 192 P.2d 229, 233. Petitioner in alleging she was by respondents' fraud prevented from receiving the statutory notice of petition for probate appears to be relying upon the settled rule that extrinsic fraud which prevents a party from having his day in court may prevent the matter from being res judicata and provide grounds for setting aside a judgment. MacRitchie v. Stevens, 8 Ariz. 410, 76 P. 478; Dragoon Marble & Mining Co. v. McNeish, 28 Ariz. 96, 235 P. 401; Dockery v. Central Arizona Light & Power Co., 45 Ariz. 434, 45 P.2d 656; and cf. Stephens v. Thomasson, 63 Ariz. 187, 160 P.2d 338. However, the facts clearly show that petitioner has not brought herself within this rule, for she knew of the probate proceedings in February, 1949, when she received her legacy of $4,000, and she then had notice of the probate proceedings and an opportunity to be heard therein on the issue of the validity of the will. Thus, absent any extrinsic fraud, if we should apply the general rules of res ju-

dicata, any defect invalidating the will, and any intrinsic fraud, was an issue of the case to be resolved by trial or on appeal. Shattuck v. Shattuck, supra, Dragoon Marble & Mining Co. v. McNeish, supra, Schuster v. Schuster, 51 Ariz. 1, 73 P.2d 1345. It is therefore apparent that were it not for our statute, Section 38–221, A.C.A.1939, supra, petitioner could not attack the probate proceedings at this time.

■ However, the legislature in its transcendent wisdom has seen fit to declare, "a like contest to cancel a will for forgery or fraud may be brought within one (1) year after the discovery of such forgery or fraud * * *." Section 38–221, supra. The right of contest was unknown to the common law and exists purely by force of statute, Medill v. Snyder, 71 Kan. 590, 81 P. 216; In re Baker's Estate (Appeal of Patrosso), 170 Cal. 578, 150 P. 989; cf. In re Whiting's Estate (Barrett v. Francis), 110 Cal.App. 399, 294 P. 502; Page on Wills, Lifetime Ed., Vol. 2, Secs. 604, 605; and apparently Arizona stands alone in allowing a contest for fraud within a year after the discovery thereof, Bancroft's Probate Practice, 2d ed., Vol. 1, Sec. 135, N. 6. We find the only appealed case brought under this statute is Sanders v. Sanders, 52 Ariz. 156, 79 P.2d 523, which is not in point on the issues raised in this case.

[6] Relying upon their interpretation of the law set forth in the Shattuck case, supra, it is urged by respondents that where the fraud has been successful and borne fruit in the form of a decree of distribution of the estate that the statute permitting a later contest does not apply because the will is merged in the decree and superseded thereby. The argument is more ingenious than persuasive, for fraud vitiates what it touches. The statute permits a contest to cancel a will for forgery or fraud within a year after the fraud is discovered, and we believe that to give the statute full effect it must be construed to apply even in cases where the fraud has met with a high degree of success and resulted in a decree of distribution.

■■ It should be stated that the instant proceedings are very narrow in their scope. We believe the fraud which must be shown at this stage to revoke the probate of a will is that which the text writers term "fraud in the factum of the instrument", for our decisions hold that a will contest in Arizona must be on issues affecting the validity of the instrument. See In re Hesse's Estate (McNutt v. Gercke), 62 Ariz. 273, 157 P.2d 347; In re Hayward's Estate (Newton v. Van Hagen), 65 Ariz. 228, 178 P.2d 547; and LaBonne v. First National Bank of Arizona, 75 Ariz. 184, 254 P.2d 435. Such fraud as this has been defined as follows:

"Fraud invalidating a will is said to be any trick, deception, or artifice by which the testator is so circumvented,

cheated, or deceived as to fall into error respecting the disposition of his property." 57 Am.Jur., Wills, Sec. 371.

Thus we are not directly concerned with decedent's lack of testamentary capacity or the due attestation or execution of the will, or such other matters as do not bear upon or tend to prove fraud in the factum of the instrument. For this reason we agree with respondents that the allegations· of extrinsic fraud are in themselves insufficient to state a claim for relief, because even assuming respondents Dowd and Kieffer conspired to prevent petitioner from receiving notice of probate and thus initially prevented her from having her day in court, this in itself is no proof of invalidity of the will. By this we do not mean to say such proof may not be admitted to aid in proving the fraud issue in the case.

### Limitations

We hold there is no merit to the contention that the petition fails because it was not filed within one year after the will was admitted to probate, for petitioner here has successfully brought herself within the last proviso of the statute, Section 38–221, supra, which does not have such a limitation. This provision that a contest to cancel a will for forgery or fraud may be brought within one year after the discovery thereof, came into our law from Chapter 15, Sec. 2, Laws 1903, and is found in our Code in two places, Section 38–221, A.C.A.1939, in the probate code, and Section 29–208, A.C.A.1939, in the article on limitations of personal actions. Section 38–221 was amended by Chapter 101, Laws 1951, but Section 29–208 remains unchanged. This appeal, however, is governed by the law as it existed prior to amendment. While there is no express limitation upon the time within which the fraud must be discovered, we believe the usual rule applies that

"* * * the aggrieved party need not have actual notice of the fraudulent act to start the running of the statute, but, if the facts and circumstances were such *as in the exercise of reasonable care and diligence he should have discovered the fraud,* he is deemed to have notice. * * *" (Emphasis supplied.)

Guerin v. American Smelting & Refining Co., 28 Ariz. 160, 236 P. 684, 687, followed in Silva v. Menderson, 41 Ariz. 258, 17 P. 2d 809; and see Eaves v. Busby, Okl., 268 P.2d 904, wherein this rule is applied in an action to upset the administration of an estate on grounds of extrinsic fraud.

Respondents argue that the petition is vulnerable to a motion to dismiss because upon its face it shows it was .not brought within one year from the discovery of the fraud, i. e., paragraph X alleges the fraud was discovered in July, 1949, and the petition was filed July 20, 1950, and hence we are to presume the fraud was discovered prior to July 20, 1949. This, however,

has not been the case since the adoption in this state of the new rules of procedure. All intendments lie in favor of the pleading, not against it, and since it is possible the fraud was discovered subsequent to July 20, 1949, the court should so presume until the record discloses otherwise.

### Failure to State a Claim

 Our probate code provides in Section 38–2007, A.C.A.1939:

"Except as otherwise provided in this chapter, the provisions of law relating to procedure in civil actions and appeals are applicable to, and constitute the rules of practice in the proceedings hereunder."

This has been construed to mean that the Rules of Civil Procedure shall govern probate proceedings absent an express provision in the probate code, In re Brandt's Estate (Brandt v. Brandt), 67 Ariz. 42, 190 P.2d 497; In re Estate of Sorrells (Sorrells v. Bergier), 58 Ariz. 25, 117 P.2d 96; cf. Sanders v. Sanders, supra. In the instant matter we have no express governing provision in the probate code.

 Respondents argue that because the petition pleads fraud generally and by way of legal conclusions in paragraphs V and VI of the petition, supra, and not with particularity as is required by Rule 9(b) Rules Civil Procedure, Section 21–414, A.C.A. 1939, that it is vulnerable to attack by a motion to dismiss for failure to state a claim. Rule 9(b) declares:

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. * * * *"

It is apparent that petitioner has filed a defective pleading, for if Rule 9 (b) is to be accorded any meaning at all we must hold the party charged with a fraud is entitled to full compliance with the rule. As we pointed out in Brazee v. Morris, 65 Ariz. 291, 179 P.2d 442, 443, Rule 9 (b) "is clearly an exception to the general rule" that pleadings shall be simple, concise and direct, hence the bare allegation that something is "fraudulent" is insufficient.

Certainly Rule 9 (b) must be enforced, but the sanction for the rule need not be the out-of-hand dismissal of the defective pleading. We have held in Anguiano v. Transcontinental Bus System, Inc., 76 Ariz. 246, 263 P.2d 305, that an interlocutory order granting a motion to dismiss is a dismissal within the meaning of Rule 41 (b), Rules Civil Procedure, Section 21–916, A.C.A.1939, and operates as an adjudication on the merits unless such involuntary dismissal is for lack of jurisdiction or improper venue. At the time of the ruling on the motion to dismiss there was also pending a motion to make more definite and certain, and the granting of this motion or the granting of the motion to dismiss with leave to amend would have effectively caused the observance of Rule 9 (b). The rule that a motion to dismiss a defective pleading will be denied—or granted with leave to amend

—if the defect can be cured by amendment finds expression in Barron & Holtzoff, Federal Practice and Procedure, Vol. 1, Sec. 356, as follows:

"The rules do not use the term 'cause of action'. It is the failure to state a 'claim upon which relief can be granted', and not failure 'to state a cause of action', which is tested by the rule (Rule 12 b 6). But the court may readily indulge in the use of old, familiar terminology and consider the objection that the complaint fails to state a cause of action as the equivalent of a motion to dismiss for failure to state a claim upon which relief can be granted. The only purpose that can be served in noting the distinction is perhaps to emphasize that the old technical rules of pleading no longer prevail; that a claim for relief stated in general terms and legal conclusions may be sufficient to inform the adversary and to withstand a motion to dismiss; and that the sufficiency of a claim so stated is not tested by the strict standards once applied to determine whether a 'cause of action' was sufficiently stated.

"The motion should not be granted unless it appears to a certainty that plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. The test is whether in the light most favorable to plaintiff, and with every intendment regarded in his favor, the complaint is sufficient to constitute a valid claim. Indefiniteness or lack of clarity in pleading will not usually warrant dismissal, but this is a matter largely within the trial court's discretion, and flagrant or persistent disregard of the rules may warrant dismissal.

"*The motion will be denied if an amendment or a motion for a more definite statement will cure the defective pleading.* * * * (Emphasis supplied.)

Likewise see 4 Cyclopedia of Federal Procedure, 3d Ed., Sec. 14.307, page 373. For cases to the effect that granting the motion to dismiss without opportunity to correct the defect is not the proper method of enforcing Rule 9 (b), see United States v. Sinclair Refining Co., 10 Cir, 126 F.2d 827; Perrott v. United States Banking Corp., D.C., 53 F.Supp. 953; and compare the procedure followed in Decorative Cabinet Corporation v. Stor-Aid of Ohio, D.C.S.D. N.Y., 10 F.R.D. 266, and Sarnoff v. Ciaglia, 3 Cir., 165 F.2d 167, reversing the decision reported in D.C., 7 F.R.D. 31; and see Leimer v. State Mutual Life Assurance Co., 8 Cir., 108 F.2d 302; Id., D.C., 1 F.R.D. 386, holding the general allegations that conduct was "unlawful" and "fraudulent" will withstand a motion to dismiss for failure to state a claim. We believe the court in Levenson v. B. & M. Furniture Co., 2 Cir., 120 F.2d 1009, summed up the matter when it said:

"The petition at bar does not indeed allege the fraud with as much particularity as is desirable. But the omission is not fatal; *it is only a pleading,* and Rule 8 (f) 28 U.S.A. following section 723c, demands that it 'shall be so construed as to do substantial justice.' Its general purport is plain enough, and if the debtor had really any doubt about its meaning—which plainly it had not—it had, and still has, relief under Rule 12 (e); *the day has passed when substantial interests stand or fall for such insubstantial reasons."* (Emphasis supplied.)

We hold that the petition herein, while defective for lack of particularity in the allegations of fraud, does state a claim for relief and was improperly dismissed without an opportunity to amend to comply with the demands of Rule 9 (b), supra.

### Estoppel

 Believing that the will was valid and without knowledge of the fraud of respondents, petitioner accepted the $4,000 bequeathed to her by the terms thereof. She has not returned nor offered to return this sum to the executrix. The will in question contains a clause providing that if any beneficiary named in the will shall contest the same, all bequests and devises to that person shall lapse and he shall take the sum of one dollar. Respondents contend that the failure to return or offer to return the sum taken under the will estops petitioner from asserting the invalidity thereof. The problem of estoppel to contest the validity of a will is the subject of two very excellent annotations, in 72 A.L.R. 1134 and 28 A.L.R.2d 116.

Zinn v. Ferris, Ex'r., 8 Ohio Law R. 237, 27 Ohio Dec. 27, affirmed 15 Ohio Cir. Ct.R.,N.S., 148, 24 Ohio Dec. 113, affirmed in 88 Ohio St. 555, 106 N.E. 1087, presents a fact situation almost identical with that of the case at bar. There a beneficiary named in the will took and retained certain sums thereunder, then sought to contest the will. A clause therein provided that any person contesting the same should forfeit all interest given in the will. The court ruled a beneficiary of the will had no capacity to attack it until he repaid what he had taken by its terms. The court said in part:

" * * * It may be said that if this will be set aside, that the share of the plaintiff will be greater than that which he has received, but that does not change the situation because if he loses he would not be authorized to retain that which he has already received."

In a later Ohio case, Bender v. Bateman, 33 Ohio App. 66, 168 N.E. 574, the court relied upon the Zinn case, supra, as controlling, and held that one who accepted benefits under a will having a forfeiture clause had no capacity to maintain the action unless the benefits were returned or offered to be returned.

Rule 9 (a), Rules Civil Procedure, Section 21–413, A.C.A.1939, declares:

"It is not necessary to aver the capacity of a party to sue or be sued * * *. *When a party desires to raise an issue as to* the legal existence of any party or *the capacity of any party to sue* or be sued or the authority of a party to sue or be sued in a representative capacity, *he shall do so by specific negative averment,* which shall include such supporting particulars as are peculiarly within the pleader's knowledge." (Emphasis supplied.)

It thus appears that the capacity to sue need not be averred, but when challenged it must be proved. Now that petitioner's capacity to sue has been challenged, she should be afforded the opportunity to fulfill the requirements of law, and the trial court should order that she pay or tender the sums she has received before proceeding further with her action.

By way of summary, it is our conclusion that the statute authorizes such an attack as this on only two grounds, (a) forgery, which is not here involved, and (b) fraud; that petitioner is not barred from presenting her claim herein by the statute of limitations or by the rules of res judicata; that the pleading does state a claim and while defective for failure to comply with Rule 9 (b) it may not be dismissed without leave to amend; and that petitioner may not proceed with her action until she shows her capacity so to do. We hold the cause must be remanded to the lower court with directions to vacate its judgment of dismissal, and for further proceedings not inconsistent with this opinion.

Judgment reversed, with directions.

PHELPS, C. J., and STANFORD, LA PRADE and WINDES, JJ., concurring.